**Alma D. CORNETTE, Respondent,**

v.

**CITY OF NORTH KANSAS CITY, Appellant.**

**No. WD33895.**

Missouri Court of Appeals, Western District.

Aug. 2, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Sept. 28, 1983.

Application to Transfer Denied Nov. 22, 1983.

David E. Larson, Morris, Larson, King, Stamper & Bold, Kansas City, for appellant.

Michael E. Reardon, Kansas City, for respondent.

Before WASSERSTROM, P.J., and KENNEDY and NUGENT, JJ.

WASSERSTROM, Presiding Judge.

Plaintiff sued to recover damages for a fall which she suffered on defendant's sidewalk. From an adverse judgment on jury verdict, defendant appeals. We hold: (1) the evidence sufficiently supported a finding of constructive notice of the sidewalk defect to defendant; (2) the verdict directing instruction pursuant to M.A.I. 22.04 was not erroneous; and (3) the trial court did not abuse its discretion in overruling defendant's objection to plaintiff's jury argument.

During the predawn hours of October 2, 1978, plaintiff was walking her dog when she stumbled over a chunk of concrete, lost her balance on the loose and crumbling

sidewalk and fell. That fall resulted in a broken hip.

Photographs in evidence showed that the sidewalk at the place of the accident was badly deteriorated with the adjacent curbing broken. Witnesses testified on behalf of plaintiff that the sidewalk condition described existed for some period of time, at least a year or two. A number of witnesses stated that they had seen chunks of concrete strewn on the walk, and that those loose chunks had been removed from time to time. Mr. Yeager and Mrs. Lansdon testified for plaintiff that the chunks of concrete which they had seen were pieces of the curbing. Plaintiff testified that the chunk of concrete over which she stumbled looked to her like a piece of the curbing, and Mrs. Helton who came to the scene of the accident shortly after it occurred also stated that the chunk of concrete on the sidewalk looked like part of the curbing. Plaintiff also testified that previous to the accident in which she broke her hip she had notified the "council people" concerning the bad condition of the sidewalk.

## I.

### Sufficiency of Notice to Defendant

Defendant argues that the specific cause of plaintiff's fall was the chunk of concrete. It further says that there is no evidence that the defendant city had any actual notice of the presence of that chunk of concrete on the sidewalk; nor was there any showing by plaintiff concerning how long the chunk of concrete was there nor any other circumstances from which constructive notice on the part of the city could be inferred.

■ The error in that argument lies in the assumption that plaintiff was required to show notice to the city of this very chunk of concrete over which she stumbled. Plaintiff was not so required. It was sufficient that she showed a general defective condition of the sidewalk of a continuous nature. *Catalano v. Kansas City,* 475 S.W.2d 426 (Mo.App.1971); *Sutter v. Kansas City,* 138 Mo.App. 105, 119 S.W. 1084

(1909); *Vance v. Kansas City,* 123 Mo.App. 644, 100 S.W. 1101 (1907); *Huff v. City of Marshall,* 97 Mo.App. 542, 71 S.W. 477 (1903); *Fadem v. City of St. Louis,* 99 S.W.2d 511 (Mo.App.1936). There was ample evidence that defendant city had notice of this general bad condition. Plaintiff testified that she had discussed this situation with representatives of the City Council. Aside from that, the evidence sufficiently showed that the condition existed for a sufficient length of time that defendant city should have known of it. The photographic and oral testimony showed physical deterioration that was gradual and the joint product of time and neglect. *See Word v. City of St. Louis,* 617 S.W.2d 479 (Mo.App. 1981).

## II.

### Instruction No. 4

Defendant objects to Instruction No. 4, the verdict director, of which paragraph First submitted to the jury the question of whether "there was a defect in the sidewalk." Defendant says that plaintiff relied not on one single defect, but rather upon three, consisting of: (1) a broken sidewalk, (2) a chunk of concrete resting thereon, and (3) a broken curbing. Defendant proceeds that the term "defect" should have been supplemented or changed to advise the jury of the specific condition upon which liability would be based.

■ The fallacy here is the same as that which underlies defendant's first point already considered under point I of this opinion. The "defect" here is the entire eroded, dilapidated condition of the sidewalk which included both the chunk of concrete strewn thereon and also the broken gravely surface of the walk itself. It was enough for plaintiff to submit this general dangerous condition without breaking it down into component parts. *Catalano v. Kansas City, supra.*

■ Instruction No. 4 followed precisely M.A.I. 22.04. That approved form of instruction sets forth paragraph First as follows: "First, there was a [defect] [crack] [hole] in the sidewalk. . . ." The Note on

Use under that approved instruction directs the user to select one of the three terms set forth in brackets. That is precisely what plaintiff did, and that is what she was required to do. See, for example, *Griffith v. Saavedra*, 409 S.W.2d 665 (Mo.1966). There was no reason or justification here for any modification in M.A.I. 22.04.

■ Defendant also contends that Instruction No. 4 was erroneous for the reason that it spoke of a defect "in" the sidewalk. Defendant argues that the instruction should have referred to a defect "on" the sidewalk. Here again defendant relies on its erroneous theory that the only defect in question was the chunk of concrete. As already pointed out, that chunk of concrete was only part of the entire dangerous condition. The factual situation here was a relatively uncomplicated one. The jury is presumed to have been made up of reasonably intelligent persons, and such persons were amply advised by Instruction No. 4 as to the issue before them. They could not have been assisted or misled whether the preposition used was "in" or "on."

## III.

### Plaintiff's Jury Argument

In his closing jury argument, counsel for plaintiff addressed the jury as follows:

"(Mr. Reardon) Ladies and gentlemen, I'm going to submit to you that you can send a message to the City of North Kansas City. Your verdict—

Mr. Larson: Excuse me just a minute. Your Honor, that is an objectionable argument.

The Court: Overruled.

Mr. Reardon: The people in North Kansas City are paying attention to what you do today. An issue in the case is does the City of North Kansas City use reasonable care to repair their sidewalks. That's for you folks to determine. You're the conscience of the community. If you were on the City Council—

Mr. Larson: Excuse me. Your Honor, may we approach the Bench?

(Counsel approached the Bench and the following proceedings were had:)

Mr. Larson: That is a punitive damages argument, Judge. I'm going to object to it on that basis and ask that the jury be instructed to disregard any evidence or any argument about conscience of the community, sending a message. That is improper argument without a punitive damage instruction.

Mr. Reardon: We're not asking for punitive damages.

Mr. Larson: I know you're not and you're not entitled to make that argument and that's not submitted to the jury.

The Court: Proceed, gentlemen. The jury will understand it's just argument. Proceed. Overruled."

Defendant contends that the foregoing argument urged the jury to award punitive damages, which were not prayed and which were not before the jury for consideration.

Defendant relies heavily on *Smith v. Courter*, 531 S.W.2d 743 (Mo. banc 1976), where a plaintiff's judgment was set aside on the ground that the closing jury argument asked the jury to consider the elements of punitive damages, where such had not been prayed. The *Smith* case is readily distinguishable. In the first place, the argument in *Smith* asked the jury "By the adequacy of your verdict" to send a message to the doctor defendants that they would have to improve the quality of their services. Even with the presence of the quoted phrase, the Missouri Supreme Court indicated its doubt as to whether the argument did in fact make a plea for punitive damages, but the Supreme Court resolved that question in favor of the finding by the trial court that such was indeed the purport of the argument there made. By way of contrast, the argument in the present case makes no reference to "the adequacy of your verdict," and the trial court by denying a new trial must be taken to have found that the argument did not constitute a plea for punitive damages.

■ Moreover, in *Smith* the trial court by granting a new trial found that the defendants had been prejudiced by the ar-

gument in question. By way of contrast, the trial court here denied a new trial thereby finding that this defendant had not been prejudiced by the plaintiff's closing argument. The trial court has a broad discretion in the area of closing argument, not lightly to be disturbed on appeal. It is in a far superior position compared to the appellate court to determine whether the argument was so prejudicial as to require remedy by the grant of a new trial. The determination of the trial court in these respects will be reversed only where it can be said that the trial court abused its discretion. *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d 920 (Mo. banc 1981); *Collins v. Cowger,* 283 S.W.2d 554 (Mo.1955); *Carter v. Liberty Equipment Co., Inc.,* 611 S.W.2d 311 (Mo. App.1981); *S.G. Payne & Co. v. Nowak,* 465 S.W.2d 17 (Mo.App.1971). No abuse of discretion appears here.

Affirmed.

All concur.